# STATE OF MICHIGAN

# COURT OF APPEALS

VIORICA MICLEA,

Petitioner-Appellant,

v

CITY OF FARMINGTON HILLS,

Respondent-Appellee.

UNPUBLISHED
March 15, 2018

No. 336565
Tax Tribunal
LC No. 2016-001106-TT

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Petitioner, Viorica Miclea, appeals as of right the opinion and judgment of the Michigan Tax Tribunal (MTT) upholding the validity of the special assessment imposed by respondent, City of Farmington Hills. The MTT concluded that petitioner failed to meet her burden of proof to rebut the presumption that the special assessment was valid. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Petitioner owns a home located in the Independence Commons Subdivision in the City of Farmington Hills. The subdivision includes approximately 4.4 miles of concrete roadway, which was determined to be in need of repair pursuant to respondent's road improvements policy. Following a public hearing of necessity in September 2015, respondent's city council adopted a resolution determining that improvements to the subdivision roads should be made and creating a special assessment district to pay for a percentage of the costs. The resolution stated that respondent would be responsible for approximately 20% of these costs, which was the maximum amount allowed by the City Charter, and the remaining approximately 80% would be covered by the special assessment district. It was anticipated that the project would involve a full reconstruction of the subdivision roadways.

Respondent then collected bids for the project. On April 11, 2016, respondent held a public hearing to review the special assessment roll for the project. The total cost of the project was estimated at $8.3 million. At the April 11, 2016 public hearing, notwithstanding the objections of petitioner and others, respondent's city council approved a resolution confirming the special assessment roll allocating $6,718,813.85 of the project costs to the properties within the special assessment district. The portion allocated to each residential unit in the special assessment district was $19,705, which was to be paid in 15 annual installments.

-1-

Less than one month later, petitioner filed a petition in the MTT, alleging that the special assessment was invalid. Petitioner alleged that the assessment should be vacated because it allocated the project's cost without conferring a benefit to the affected properties. In support, petitioner submitted into evidence a benefit analysis prepared by DeGroat Keenan Commercial, Inc. (the "Keenan report"), which was prepared to analyze the impact of the road improvements on the property values of 76 petitioners in the Independence Commons Subdivision who were challenging the special assessment. The Keenan report concluded that the values of properties in the subdivision were the same with the road improvements as without the improvements. Attached to the report was a summary related to petitioner's home, asserting that the value of the land both with and without the improvements was $58,300.

After a hearing on December 15, 2016, the tribunal entered a written final opinion and judgment in favor of respondent, concluding that petitioner failed to meet the burden of proof necessary to rebut the presumption that the special assessment was valid. The tribunal reasoned that the Keenan report lacked credibility because it merely provided a general market analysis that could not be extrapolated specifically to petitioner's property. This appeal followed.

## II. STANDARD OF REVIEW

"Review of a decision by the MTT is very limited." *Drew v Cass Co*, 299 Mich App 495, 498; 830 NW2d 832 (2013). "Absent fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal made an error of law or adopted a wrong legal principle." *Leahy v Orion Twp*, 269 Mich App 527, 529; 711 NW2d 438 (2006) (quotation marks and citation omitted). The question whether certain improvements have caused an increase in the value of land is a factual one that is to be determined by the MTT as the trier of fact, based on the evidence presented by the parties. *Kadzban v City of Grandville*, 442 Mich 495, 502; 502 NW2d 299 (1993). "On review, this Court will reverse a decision of the Tax Tribunal only if its decision is not supported by competent, material, and substantial evidence on the whole record." *Id.* "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy*, 269 Mich App at 529-530 (quotation marks and citation omitted).

## III. APPLICABLE LAW

"A special assessment is a levy upon property within a specified district." *Kadzban*, 442 Mich at 500. "Unlike a tax, which is imposed to raise revenue for general governmental purposes, a special assessment is designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area." *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 493; 597 NW2d 858 (1999). This Court has previously explained the general principles regarding the validity of special assessments:

Two requirements must be met in order for a special assessment to be deemed valid: (1) the improvement funded by the special assessment must confer a special benefit upon the assessed properties beyond that provided to the community as a whole, and (2) the amount of special assessment must be reasonably proportionate to the benefits derived from the improvement. In order for an improvement to be deemed to have conferred a "special benefit," it must cause an increase in the

market value of the land specially assessed. A determination of increased market value is necessary to determine whether the benefit is proportionate to the cost incurred. The decisions of municipal officers regarding special assessments are presumed to be valid and " 'generally should be upheld.' " [*Id*. at 493-494 (citations omitted).]

With respect to the special benefit question, "[t]he essential question is not whether there was any change in market value, but rather whether the market value of the assessed property was increased as a result of the improvement." *Id*. at 496. "[T]he relevant comparison is not between the market value of the assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property *with* the improvement and the market value of the assessed property *without* the improvement." *Id*.

Additionally, the presumption of validity that is applied to special assessments is a well-settled principle within our state. *Kadzban*, 442 Mich at 502. "[T]o effectively challenge special assessments, plaintiffs, at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." *Id*. at 505. "Without such evidence, a tax tribunal has no basis to strike down special assessments." *Id*. It is only "after plaintiffs present evidence effectively rebutting the presumption of validity, [that] the burden of going forward with evidence shifts to the city," and "[a]t that point, the city must . . . present evidence proving that the assessments are reasonably proportionate in order to sustain the assessments." *Id*. at 505 n 5.

Furthermore, municipal decisions regarding special assessments are afforded deference by the courts. *Id*. at 502. As our Supreme Court has explained:

When reviewing the validity of special assessments, it is not the task of courts to determine whether there is "a rigid dollar-for-dollar balance between the amount of the special assessment and the amount of the benefit . . . ." Rather, a special assessment will be declared invalid only when the party challenging the assessment demonstrates that "there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." [*Id*. (citations omitted; ellipsis in original).]

IV. ANALYSIS

In this case, petitioner first argues that respondent, in order to be entitled to the presumption that the special assessment district was valid, was first required to affirmatively establish that it conducted a benefit analysis determining that the benefit to the subdivision properties was proportional to the cost assessed. More specifically, petitioner argues that the MTT erred by placing the burden on petitioner to rebut the presumption of the special assessment's validity.

While petitioner is correct that the improvements funded by a special assessment must confer a special benefit on the subject properties and that the special assessment amount must be reasonably proportionate to the benefit derived, *Ahearn*, 235 Mich App at 493, petitioner's

argument directly contradicts the well-settled allocation of the evidentiary burden in challenges to special assessments. A special assessment is presumed valid until a successful challenge is made, which requires the challenging party to *first* present credible evidence to rebut that presumption; only after the challenger has rebutted the validity of the presumption, must the city present evidence to prove that the benefit is proportional to the amount of the assessment. *Kadzban*, 442 Mich at 505, 505 n 5. Thus, the initial burden of rebutting the presumption of validity is clearly on petitioner, and petitioner's argument to the contrary is without merit.

Next, petitioner argues that the special assessment should be deemed invalid due to alleged procedural irregularities in its creation. Specifically, petitioner claims that respondent did not determine the benefit to the subdivision properties before creating the special assessment district and did not make a reasonable estimate of increased market value based on local data or studies. We presume that petitioner is arguing that respondent's process for creating the special assessment district violated its charter. However, petitioner fails to cite any specific language in the City Charter, or other legal authority, that requires respondent to conduct a cost-benefit analysis or determine the benefit to the affected properties pursuant to any particular method, use of data, studies, or specific procedural steps.[1] Petitioner's argument is nothing more than a conclusory assertion that respondent unlawfully deviated from allegedly required procedures. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Goolsby v City of Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984) (quotation marks and citation omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Moreover, as previously discussed, respondent could rely on the presumption of the special assessment's validity until that presumption was effectively rebutted by petitioner. *Kadzban*, 442 Mich at 505, 505 n 5.

Petitioner next argues that based on the Keenan report, she met her burden of proof to rebut the presumptive validity of the special assessment. As previously noted, petitioner must present "credible evidence" to rebut the presumption that the assessment was valid, and a party challenging a special assessment must demonstrate a "substantial or unreasonable

---

[1] For this reason, *Steckert v City of East Saginaw*, 22 Mich 104, 105-110 (1870), which petitioner cites for the proposition that a special assessment may be declared invalid when a city fails to comply with its charter in adopting the special assessment, is distinguishable from the instant case and petitioner's reliance on *Steckert* is therefore misplaced. In *Steckert*, specific provisions of the city's charter were cited that expressly provided for certain actions to be taken that were not actually taken, such as the manner of recording the votes of council members for approval of resolutions, and our Supreme Court concluded that the voting provision had been clearly violated. *Id*. at 105-107, 109-110. However, in the instant case, petitioner has not cited any provision of respondent's charter requiring it to expressly take the actions that petitioner claims it should have taken.

disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements" before a special assessment will be found invalid. *Kadzban*, 442 Mich at 502, 505. It follows that a petitioner must present credible evidence that (1) the improvement funded by the assessment does not confer a special benefit upon the assessed properties or (2) that the amount of the special assessment is not reasonably proportionate to the benefits derived from the improvement. See *Ahearn*, 235 Mich App at 493.

In *Kadzban*, 442 Mich at 499, 503-505, our Supreme Court affirmed a ruling of the MTT finding that the plaintiffs had not shown that a special assessment for road improvements was invalid. The *Kadzban* Court noted that the hearing officer had found the study of property values relied on by the plaintiffs to be " 'deficient as to a proper foundation for its believability; questionable as the assumptions upon which its credibility rested; challengeable as to the reliability, and arbitrary in the selection of sales used; disproportional and dissimilar in the comparison data available on and off Canal Avenue; and short of the import necessary to overrule the assessments.' " *Id*. at 504. The Court further noted that the hearing officer found other evidence introduced by plaintiffs to be not credible. *Id*. at 505. Our Supreme Court concluded that the record supported the hearing officer's finding that the plaintiffs had not rebutted the presumption of the special assessment's validity and that "[o]n this basis alone, the decision of the Tax Tribunal was correct and should be upheld." *Id*. at 504-505.

In this case, petitioner argues that the Keenan report sufficiently demonstrated that subdivision properties were not benefitted by the road improvements. However, the hearing officer concluded that this report lacked credibility, specifically finding that the report failed to explain why its paired-sales analysis[2] considered certain properties and no other ones that were potentially relevant. Additionally, the hearing officer found that the report failed to provide specific information regarding the paired-sale properties that would allow comparison with petitioner's property, failed to adequately support the means for making adjustments to the sale prices in the analysis that were relied on to reach the conclusion that road improvements did not confer a benefit, and failed to demonstrate a connection between the general information about various sales supposedly showing no increase in value from road improvements and the subject property that would support a specific conclusion about whether the road improvements in this case conferred a benefit on petitioner's property.

Based on our review of this report, we agree that this report did not credibly support its conclusion that no increase in petitioner's property value resulted from the road improvements. At best, the report appears to show general trends regarding home sales *before and after* road improvements in an attempt to extrapolate this trend to the properties in the Independence Commons Subdivision, which includes petitioner's property. However, the report does not adequately explain how the conclusion—that petitioner's property value is the same *with and without* the road improvements—necessarily follows from the information contained in the report. Thus, the report fails to address the pertinent question. *Ahearn*, 235 Mich App at 496.

---

[2] According to the Keenan report, this analysis involved analyzing "[t]hree sets of the sale and resale of the same property with and without road improvements."

Because petitioner failed to rebut the presumption of the special assessment's validity with credible evidence, the MTT did not err by concluding that the special assessment was valid. *Kadzban*, 442 Mich at 504-505.

Finally, petitioner also claims that the tribunal erred by failing to consider other evidence she submitted,[3] primarily Exhibit 10, which consists of tables showing the State Equalized Values (SEV) and True Cash Values (TCV) over a period of years for seven residential properties, some of which were apparently on roads where road improvements had been made. The hearing officer did not specifically address this exhibit in reaching his conclusion. However, the pertinent comparison for purposes of the instant case is between the market value of petitioner's property with and without the improvement, *Ahearn*, 235 Mich App at 496, and Exhibit 10 is simply not relevant to that comparison. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence which is not relevant is not admissible." MRE 402. In proceedings before the MTT, "[t]he rules of evidence must be followed as far as practicable, but the tribunal 'may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.' " *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 52; 572 NW2d 232, 239–40 (1997), quoting MCL 205.746(1). Moreover, MCL 205.746(1) specifically provides that "[i]rrelevant, immaterial, or unduly repetitious evidence may be excluded."

---

[3] We note that petitioner makes a misplaced argument to the extent she argues that the tribunal erred in concluding that substantial evidence supported a conclusion that the special assessment was proportionate to the benefit conferred. The tribunal did not rely on such a conclusion or consider respondent's evidence in support of the special assessment because the tribunal concluded that petitioner had failed to meet her burden to overcome the presumption that the special assessment was valid.

Additionally, to the extent petitioner briefly refers to testimony at the hearing before the MTT that was apparently excluded, any challenge on this ground has essentially been waived. Petitioner failed to provide this Court with a transcript of this proceeding. Petitioner has not indicated that a transcript is unavailable, nor has petitioner offered any other explanation for this failure to provide a transcript. It was petitioner's responsibility as the appellant to provide the transcript. MCR 7.210(B)(1)(a). By failing to provide this Court with the pertinent portion of the record, namely the transcript of the hearing that would show the substance of this testimony, petitioner has not made it possible for us to review this issue and we therefore decline to address the issue further. See *Kern v Kern-Koskela*, 320 Mich App 212, 229-230; 905 NW2d 453, 465 (2017) (declining to consider an issue involving a fact question where the appellant did not provide the relevant transcripts to this Court on appeal, reasoning that " '[t]his Court will refuse to consider issues for which the appellant failed to produce the transcript' ") (citation omitted). We further note that generally, a party who proceeds *in propria persona* is to be held to the same standards as an attorney. *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962); *Totman v Royal Oak Sch Dist*, 135 Mich App 121, 126; 352 NW2d 364 (1984).

Here, the tables in Exhibit 10 merely show the SEV and TCV before and after road improvements related to certain properties, which can fluctuate for a multitude of other reasons. This exhibit does not contain any information that makes it any more or less probable that petitioner's property value would increase, or not increase, *with* the road improvements when compared to its value *without* the improvements; because the exhibit does not address the material question, it is not relevant and could properly be excluded.  MRE 401; MRE 402; MCL 205.746(1).

Affirmed.  Respondent, as the prevailing party, may tax costs.  MCR 7.219(A).


/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto